UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANCIS B. ARMAH, | ) |
|       Petitioner, | ) |
| v. | ) Case No. 21-CV-0011-CVE-CDL |
| JANET DOWLING, | ) |
|       Respondent. | ) |

## OPINION AND ORDER

Before the Court is respondent Janet Dowling's motion (Dkt. # 10) to dismiss the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) filed by petitioner Francis Armah. Dowling urges the Court to dismiss the petition as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Having considered the petition, Dowling's motion and brief in support (Dkt. # 11), and Armah's response (Dkt. # 12) in opposition to the dismissal motion, the Court finds that Dowling's motion should be granted.[1] The Court therefore dismisses the petition for writ of habeas corpus, with prejudice, as barred by the one-year statute of limitations.

---

[1] On July 12, 2021, Armah filed a "notice to the court" (Dkt. # 13). The Court directed the Clerk of Court to docket the notice as a supplement to Armah's response to the motion to dismiss. However, on further review, the Court finds that Armah filed this document only to notify this Court that he recently filed a fourth application for postconviction relief in state district court seeking relief on a new claim. The Court has not considered the contents of the "notice" in ruling on Dowling's motion to dismiss.

I.  **Background**

Armah, a state inmate appearing pro se,² brings this federal habeas action to challenge the constitutional validity of the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2015-572. Dkt. # 1, Pet., at 1.³ In that case, a jury convicted Armah of three counts of first degree rape (counts two, five and eight), larceny from a house (count three), forcible sodomy (count four), and rape by instrumentation (count six), all after former conviction of two or more felonies.⁴ Dkt. # 1, Pet., at 1; Dkt. # 11-1, at 1-2. In accordance with the jury's sentencing recommendations, the trial court sentenced Armah to life without the possibility of parole as to counts two, five and eight, life imprisonment as to count four, 20 years' imprisonment as to count six, and four years' imprisonment as to count three. Dkt. # 11-1, at 2. The trial court ordered that Armah serve the sentences for counts two and eight concurrently with each other, that he serve the sentences for counts four, five and six concurrently with each other but consecutive to the sentences for counts two and eight, and that he serve the sentence for count three consecutively to all other sentences. Dkt. # 11-1, at 2.

Represented by counsel, Armah filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"), raising three claims. Dkt. # 1, Pet., at 2, 12; Dkt. # 11-1, at 10-20. The OCCA denied each claim on the merits and affirmed Armah's judgment and sentence in an unpublished

---

2   Because Armah appears without counsel, the Court liberally construes Armah's petition and response to the dismissal motion. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

3   For consistency, the Court's citations refer to the CM/ECF header pagination.

4   The convictions as to counts two, three and eight were based on crimes committed against A.W. on December 29, 2014, and the convictions as to counts four, five and six were based on crimes committed against T.K. on January 26, 2015. Dkt. # 11-2, at 2 n.3.

opinion filed April 28, 2017. Dkt. # 11-1, at 1, 10-22. Armah did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court. Dkt. # 1, Pet., at 3.

Proceeding pro se, Armah filed his first application for postconviction relief in the District Court of Tulsa County on March 28, 2018, raising five claims. Dkt. # 11-2, at 3-14; Dkt. # 11-3, at 10. The state district court issued an order on July 9, 2018, denying the application. Ten days later, on July 19, 2018, Armah filed a motion requesting leave to file a reply to the state's response to his application and a notice of postconviction appeal. Dkt. ## 11-4, 11-5. Armah did not perfect a timely postconviction appeal from the denial of his first application for postconviction relief. Dkt. # 11-6, at 2-3.

On July 15, 2019, almost one year after filing notice of his intent to appeal from the order denying his first application for postconviction relief, Armah filed a second application for postconviction relief seeking a recommendation for a postconviction appeal out of time. Dkt. # 11-6. He claimed that he was denied a postconviction appeal from the denial of his first application through no fault of his own because "a series of institutional lockdowns . . . effectively prevented him from significant and meaningful access to the assistance from the prisons [sic] law clerk for assistance." Dkt. # 11-6, at 2. He further claimed that he was denied all access to legal materials after he committed a rules violation and was placed in the segregated housing unit. Dkt. # 11-6, at 3. The state district court denied Armah's second application for postconviction relief on September 17, 2019, finding that Armah failed to show that he was denied a postconviction appeal through no fault of his own. Dkt. # 11-7, at 2-4. Armah did not perfect a postconviction appeal from the denial of his second application for postconviction relief. Dkt. # 11-9, at 2.

On January 3, 2020, Armah filed a third application for postconviction relief, seeking a recommendation for a postconviction appeal out of time from the orders denying his first and second applications for postconviction relief. Dkt. # 11-8; Dkt. # 11-10, at 1. In this application, Armah appeared to reassert his arguments regarding the circumstances that allegedly prevented him from perfecting a postconviction appeal following the denial of his first application for postconviction relief. Dkt. # 11-8, at 2-3. He further asserted that his failure to timely file a postconviction appeal following the denial of his second application for postconviction relief resulted from a facility-wide lockdown, between September 15, 2019, and November 5, 2019, that restricted his access to the law library, and his "lack of knowledge and inability to adequately communicate his objectives to the inmate assistant" which "caused him to misfile his appeal." Dkt. # 11-8, at 3-4. The state district court denied Armah's third application for postconviction relief on April 5, 2020, finding (again) that Armah failed to show that he was denied a postconviction appeal through no fault of his own. Dkt. # 11-9, at 2-4. Armah perfected a timely postconviction appeal in the OCCA, seeking review of the order denying his third application for postconviction relief, and the OCCA affirmed the denial of his third application for postconviction relief on August 21, 2020. Dkt. # 11-10.

Armah filed the instant petition seeking federal habeas relief on January 7, 2021.[5] Doc. 1, Pet., at 1.

---

[5] The Clerk of Court received the petition on January 8, 2021. But Armah declares, under penalty of perjury, that he placed the petition in the prison's legal mailing system, with proper postage affixed, on January 7, 2021. Dkt. # 1, Pet., at 14, 122. Applying the prison mailbox rule, the Court deems the petition filed on January 7, 2021. Houston v. Lack, 487 U.S. 266, 276 (1988); Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

**II.     Analysis**

Dowling urges this Court to dismiss the petition as barred by the applicable statute of limitations. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state prisoners have one year from the latest of four triggering events in which to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). For most prisoners, the limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). A state prisoner's one-year limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2). But the statutory tolling provision applies only if the prisoner properly files an application for postconviction relief or other collateral review in state court within the applicable one-year limitation period. Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006). And an application for postconviction relief or other collateral review is "pending" in state court, for tolling purposes, only if it is "properly filed," i.e., "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). In rare circumstances, the one-year limitation period may be tolled for equitable reasons. Holland v. Florida, 560 U.S. 631, 645 (2010); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000).

### A.     The petition is untimely

Applying 28 U.S.C. § 2244(d)(1)(A),[6] Armah's conviction became final on July 27, 2017, upon the expiration of the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court for further direct review of his judgment and sentence. Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). His one-year limitation period commenced the next day, July 28, 2017, and, absent any statutory tolling events, would have expired on July 30, 2018. Harris v. Dinwiddie, 642 F.3d 902, 906 n.6 (10th Cir. 2011); FED. R. CIV. P. 6(a)(1).[7] Armah filed his first application for postconviction relief in state district court on March 28, 2018, after 243 days of his one-year limitation period had passed. The state district court denied his application on July 9, 2018, and, under state law, Armah had 30 days from that date, or until August 7, 2018, to perfect a postconviction appeal. OKLA. STAT. tit. 22, § 1087. Even though he did not perfect a postconviction appeal, Armah is entitled to statutory tolling for the 30-day period in which he could have done so. Gibson, 232 F.3d at 803-04. Thus, the one-year limitation period was tolled between March 28, 2018, and August 7, 2018, while Armah's first application for postconviction relief was pending. 28 U.S.C. § 2244(d)(2). Armah's one-year clock began to run again the next day, August 8, 2018, with 122 days left to file a timely federal habeas petition. His one-year limitation period expired on

---

[6]  Under some circumstances, the one-year limitation period may commence on later date based on the triggering events described in 28 U.S.C. § 2244(d)(1)(B), (C), and (D). Even with the benefit of liberal construction, the Court does not discern any arguments in the petition or the response to the dismissal motion suggesting that Armah's one-year limitation period commenced at a later date under § 2244(d)(1)(B), (C), or (D). The Court thus confines its analysis to whether the petition is timely under § 2244(d)(1)(A).

[7]  The one-year limitation period would have expired on July 28, 2018. But because that was a Saturday, Armah had until the following Monday to file a timely habeas petition, absent any tolling events. FED. R. CIV. P. 6(a)(1)(C).

December 7, 2018, the last day of the 122-day period. Because Armah filed his second and third applications for postconviction relief in July 2019 and January 2020, after his one-year limitation period expired, neither application had any tolling effect. Clark, 468 F.3d at 714; see also Gibson, 232 F.3d at 806 (explaining that even when a state court "look[s] beyond procedural deficiencies to grant an appeal out of time" that "does not transform all of a petitioner's state filings into one 'properly filed' application, which essentially 'relates back' to a petitioner's original application for state post-conviction relief"). Consequently, the petition filed on January 7, 2021, is untimely, even with the benefit of statutory tolling.

      **B.**     **Armah's circumstances do not support equitable tolling.**

The failure to comply with § 2244(d)(1)'s one-year statute of limitations does not deprive a federal habeas court of jurisdiction. Holland, 560 U.S. at 645. As a result, the court may toll the limitation period, for equitable reasons, if the petitioner shows that he has diligently pursued his federal claims and that extraordinary circumstances prevented him from filing a timely petition. Id. at 649; Pace v. Diguglielmo, 544 U.S. 408, 418 (2005). Equitable tolling is "a rare remedy to be applied in unusual circumstances." Al-Yousif v. Trani, 779 F.3d 1173, 1179 (10th Cir. 2015) (quoting Yang v. Archuleta, 525 F.3d 925, 929 (10th Cir. 2008)). And it is the petitioner's burden to show specific facts that would support equitable tolling. Yang, 525 F.3d at 928.

In his petition, Armah does not request equitable tolling or even acknowledge that his petition was not filed within the one-year limitation period.[8] However, in his response to Dowling's motion to dismiss, Armah alleges that several extraordinary circumstances prevented him from filing a

---

[8]    In the portion of the petition designated for explaining why noncompliance with the statute of limitations should not bar habeas relief, Armah wrote "N/A." Dkt. # 1, Pet., at 13.

timely petition despite his diligent efforts. Dkt. # 12, Resp., at 1-11. He specifically alleges (1) that he lacks legal training and had only "a little assistance from the prison law library inmate legal research assistant at [the] North Fork Correctional Facility" when he attempted to file his first postconviction appeal, and (2) that his access to the law library and the courts has been restricted by institutional and state-wide security lock downs, his temporary placement in a segregated housing unit following a rule violation, his transfer to the Davis Correctional Facility, and the coronavirus pandemic. Dkt. # 12, Resp., at 1-11.

While Armah has provided the Court with specific facts to support his request for equitable tolling, those facts do not demonstrate either that Armah pursued his federal claims with reasonable diligence or that extraordinary circumstances rendered him incapable of filing a timely federal habeas petition. Significantly, many of the circumstances Armah describes occurred well after his one-year limitation period expired in December 2018. For example, Armah refers to his placement in the segregated housing unit between April and May 2019, his transfer to the Davis Correctional Facility in June 2019, a state-wide security lock down that began in September 2019, and limitations on his access to the law library and the courts arising from the coronavirus pandemic that began affecting prisons and courts in Oklahoma no earlier than March 2020. Dkt. # 12, Resp. at 6-9, 19-21. Even disregarding that these events occurred well after Armah's one-year limitation period expired, limited access to legal materials and legal assistance, placement in administrative segregation, inter-facility transfers, and security lock downs are ordinary circumstances of prison life and, in most cases, do not constitute extraordinary circumstances that support equitable tolling. See, e.g., Dill v.

Workman, 288 F. App'x 454, 457 (10th Cir. 2008) (unpublished)[9] (rejecting prisoner's request for equitable tolling based on findings that 74-day prison lock down was not extraordinary and that the petitioner failed to explain his delay in filing federal habeas petition after lock down ended); Yang, 525 F.3d at 929-30 (concluding that prisoner's limited proficiency in the English language and lack of access to legal materials in his first language did not warrant equitable tolling); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (finding no equitable tolling warranted when prisoner alleged the prison facility "lacked all relevant statutes and case law" and "the procedure to request specific materials was inadequate").  Even if these circumstances had occurred before Armah's one-year limitation period expired, the Court finds that they do not, collectively or individually, support equitable tolling.

Armah does identify two circumstances that occurred before his one-year limitation period expired in December 2018.  First, he claims that the state district court impeded his ability to perfect a postconviction appeal from the denial of his first application for postconviction relief by failing to send him a certified copy of the order denying relief. Dkt. # 12, Resp., at 2-3, 6.  He contends that he acted with diligence in trying to obtain a copy by sending a letter, dated July 13, 2018, to the court clerk requesting a certified copy, and, after failing to receive any response, he filed his second application for postconviction relief on July 15, 2019, requesting leave to file an out-of-time

---

[9]     The Court cites this unpublished decision for its persuasive value. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

postconviction appeal.[10] Dkt. # 12, Resp., at 3, 55-59. Second, he alleges that while he was waiting for a response to his July 13, 2018 letter, there was an institutional or state-wide lock down "for [an] extended period of time." Dkt. # 12, Resp., at 1-2, 6. Even assuming, for the sake of argument, that the failure to receive a certified copy of the state district court's order and a lock down of unknown duration that occurred sometime in the summer or fall of 2018 interfered with Armah's attempt to timely perfect his first postconviction appeal, the fact that he waited until July 15, 2019—nearly one year after his postconviction appeal time expired and about seven months after his federal filing deadline expired—to request an out-of-time postconviction appeal undermines Armah's contention that he acted with reasonable diligence in pursuing his federal claims. Without the requisite diligence, Armah cannot obtain equitable tolling. See Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 255 (2016) (noting that Holland's test requires the party seeking equitable tolling to establish "two elements," diligent pursuit of the party's rights and extraordinary circumstances that prevented timely filing).

Based on the foregoing, the Court concludes that Armah has not met his burden to show that the one-year limitation period should be equitably tolled so that his petition, filed just over two years too late on January 7, 2021, could be deemed timely.[11]

---

[10]  Curiously, in his second application for postconviction relief wherein he sought to establish that he was denied a first postconviction appeal through no fault of his own, Armah did not mention either (1) his failure to receive a certified copy of the district court's order or (2) his failure to receive a response to his July 13, 2018 letter requesting a certified copy from the court clerk. Dkt. # 11-6, 1-4.

[11]  Even if this Court could be persuaded that all of Armah's cited circumstances were extraordinary and that he acted with reasonable diligence in his efforts to exhaust available state remedies before filing his federal habeas petition, the Court would still conclude that Armah fails to show diligence in pursuing his federal claims. Critically, after the OCCA
(continued...)

### III.    Conclusion

Even with the benefit of statutory tolling, Armah failed to file his petition for writ of habeas corpus within the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1)(A). And Armah has not demonstrated that his circumstances warrant equitable tolling of the one-year limitation period. The Court therefore grants Dowling's motion, and dismisses the petition, with prejudice, as barred by the one-year statute of limitations. The Court further concludes that reasonable jurists would not debate the procedural dismissal of the untimely petition and thus declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The motion to dismiss (Dkt. # 10) is **granted**.

2. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice** as barred by the one-year statute of limitations.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 26th day of August, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[11]   (...continued)
affirmed the denial of Armah's third application for postconviction relief, on August 21, 2020, thereby confirming that there was nothing left for Armah to do in state court, Armah permitted an additional four months to pass by before he filed his federal habeas petition.